PEOPLE v GREEN

PEOPLE v BAKER

Docket Nos. 194995, 195607. Submitted December 10, 1997, at Detroit. Decided March 20, 1998, at 9:00 A.M. Leave to appeal sought.

David L. Green and Rodney J. Baker were convicted following a joint trial before a single jury in the Genesee Circuit Court, Donald R. Freeman, J., of three counts of kidnapping, three counts of armed robbery, and single counts of carjacking, carrying a concealed weapon, being a felon in possession of a firearm, and possession of a firearm during the commission of a felony. Green was also convicted of single counts of first-degree criminal sexual conduct and assault with intent to commit great bodily harm less than murder, and two counts of retaining a financial transactions device without consent. Baker was also convicted of two counts of first-degree criminal sexual conduct. Both defendants were sentenced as second-offense habitual offenders. Green appealed. (Docket No. 194995). Baker appealed. (Docket No. 195607). The appeals were consolidated.

The Court of Appeals *held*:

1. Manifest injustice will not result from the failure of the Court of Appeals to review Green's argument that he was denied a fair trial as a result of the trial court's failure to sever the charge of being a felon in possession of a firearm from the other charges against him. Adequate safeguards were in place at the trial to prevent unfair prejudice from arising from the single trial for all the charges. The issue was not preserved for appeal because Green neither moved in the trial court to sever the prosecutions nor objected at trial.

2. Green's right to bear arms under Const 1963, art 1, § 6 was not violated as a result of being charged with violating the statute that makes it a felony for certain convicted felons to possess firearms.

3. Green is not entitled to relief with regard to alleged improper prosecutorial arguments to which no objections were made in the trial court.

4. A rational trier of fact could have found the elements of the carjacking charge against Green proved beyond a reasonable doubt. A defendant "takes" a motor vehicle "from" another, for pur-

poses of the crime of carjacking, by acquiring possession of the vehicle through force or violence, threat of force or violence, or by putting another in fear. The hallmark of possession is dominion and control. Defining "take" in terms of possession does not require that the victim be physically separated from the vehicle. Here, the continued, forced presence of the victims in the vehicle while Green exercised dominion and control over the vehicle did not diminish Green's exercise of possession over the vehicle.

5. The evidence was sufficient to support Green's kidnapping convictions. There was sufficient evidence of the element of asportation of the victims. A rational trier of fact could have found that the movement of the victims was in furtherance of the kidnappings and that the other crimes merely occurred during the course of the kidnappings.

6. The court properly denied Baker's motion for a directed verdict regarding the carjacking charge. Baker's argument that the evidence did not show he intended to permanently deprive the victims of their vehicle is of no avail. The defendant's intent to permanently deprive the victim of the vehicle is not an element of the crime of carjacking.

7. The court did not abuse its discretion in sentencing Baker. The sentences as an habitual offender were proportionate.

8. The court did not err in failing to vacate Baker's underlying convictions before sentencing him as an habitual offender.

9. There is no merit to Baker's argument that neither he nor his counsel were afforded the right of allocation.

10. The court met the requirements of MCL 769.13(5)(c); MSA 28.1085(5)(c) in sentencing Baker as an habitual offender.

Affirmed.

1. CRIMINAL LAW — POSSESSION OF FIREARM BY PERSON CONVICTED OF FELONY — MULTIPLE CHARGES — EVIDENCE.

Adequate safeguards can be erected to ensure that a defendant charged with both possession of a firearm by a person convicted of a felony and other felonies that arise from the same criminal transaction suffers no unfair prejudice if separate trials are not conducted for each charge; the safeguards include introducing by a stipulation the fact of the defendant's prior conviction, limiting instructions emphasizing that the jury must give separate consideration to each count of the indictment, and instructions to consider the prior conviction only as it relates to the charge of being a felon in possession of a firearm (MCL 750.224f; MSA 28.421[6]).

2. CONSTITUTIONAL LAW — POSSESSION OF FIREARM BY PERSON CONVICTED OF FELONY — RIGHT TO BEAR ARMS.

A person's right to bear arms under Const 1963, art 1, § 6 is not absolute and is subject to the reasonable police power limitations set forth in the statute that makes it a felony for certain convicted felons to possess firearms (MCL 750.224f; MSA 28.421[6]).

3. Criminal Law — Carjacking — Elements — Words and Phrases — Take.

The elements of the crime of carjacking are the taking of a motor vehicle from another person, in the presence of that person, a passenger, or any other person in lawful possession of the motor vehicle, either by force or violence, by threat of force or violence, or by putting another in fear; a defendant takes a motor vehicle from another by acquiring possession of the vehicle through force or violence, threat of force or violence, or by putting another in fear; the hallmark of possession of a vehicle is the exercise of dominion and control over the vehicle; defining "take" in terms of possession does not require that the victim be physically separated from the vehicle; an intent to permanently deprive the victim of the motor vehicle is not an element of the crime (MCL 750.529a; MSA 28.797[a]).

4. Criminal Law — Kidnapping — Elements — Asportation.

Asportation of the victim is a judicially required element of the crime of kidnapping by forcible confinement or imprisonment; to establish asportation, there must be some movement of the victim taken in furtherance of the kidnapping that is not merely incidental to the commission of another underlying lesser or coequal crime (unless the underlying crime involves murder, extortion, or taking a hostage) (MCL 750.349; MSA 28.581).

5. Sentences — Habitual Offenders — Prior Convictions.

The statute regarding notice of a prosecuting attorney's intent to seek an enhanced sentence for an habitual offender provides that the existence of the defendant's prior conviction or convictions must be determined by the trial court at sentencing or at a separate hearing for that purpose before sentencing; the existence of a prior conviction may be established by any evidence that is relevant for that purpose, including information contained in the presentence report (MCL 769.13[5]; MSA 28.1085[5]).

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *Arthur A. Busch*, Prosecuting Attorney, and *Donald A. Kuebler*, Chief, Appeals, Research, and Training, for the people.

State Appellate Defender (by *Ralph C. Simpson*), for David L. Green.

*Laurence R. Imerman,* for Rodney J. Baker.

Before: SAWYER, P.J., and WAHLS and REILLY, JJ.

PER CURIAM. Following a joint trial before a single jury, defendants David L. Green and Rodney J. Baker were both convicted of three counts of kidnapping, MCL 750.349; MSA 28.581, three counts of armed robbery, MCL 750.529; MSA 28.797, carjacking, MCL 750.529a; MSA 28.797(a), carrying a concealed weapon, MCL 750.227; MSA 28.424, being a felon in possession of a firearm, MCL 750.224f; MSA 28.421(6), and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). In addition, Green was convicted of one count of first-degree criminal sexual conduct, MCL 750.520b; MSA 28.788(2), assault with intent to commit great bodily harm less than murder, MCL 750.84; MSA 28.279, and two counts of retaining a financial transaction device without consent, MCL 750.157n; MSA 28.354(14). Baker was also convicted of two counts of first-degree criminal sexual conduct, MCL 750.520b; MSA 28.788(2).

The trial court sentenced Green to forty to seventy years' imprisonment for each of his kidnapping convictions; forty to seventy years' imprisonment for each of the armed robbery convictions; forty to seventy years' imprisonment for the first-degree criminal sexual assault conviction; ten to fifteen years' imprisonment for the assault conviction; 4 to 7½ years' imprisonment for the carrying a concealed weapon conviction; 4 to 7½ years' imprisonment for the felon in possession of a firearm conviction; four to six

years' imprisonment for each of the retaining a financial transaction device without consent convictions; two years' imprisonment for the felony-firearm conviction, to be served before all other terms; and forty to seventy years' imprisonment for the carjacking conviction to be served consecutively to all other sentences. Green was sentenced as a second-offense habitual offender, under MCL 769.10; MSA 28.1082. Green appeals as of right.

The trial court sentenced Baker to twenty-five to forty-five years' imprisonment for each of his kidnapping convictions; twenty-five to fifty years' imprisonment for each of the armed robbery convictions; forty to seventy years' imprisonment for each of the first-degree criminal sexual conduct convictions; 5 to 7½ years' imprisonment for the carrying a concealed weapon conviction; 5 to 7½ years' imprisonment for the felon in possession of a firearm conviction; two years' imprisonment for the felony-firearm conviction, to be served before all other terms; and forty to seventy years' imprisonment for the carjacking conviction to be served consecutively to all other sentences. Baker was also sentenced as a second-offense habitual offender, under MCL 769.10; MSA 28.1082. Baker appeals as of right. The appeals were consolidated. We affirm with regard to both defendants.

In the early morning hours of July 21, 1995, three female friends left a bar in the city of Flint, intending to drive to a friend's house. The women rode in a convertible with the top down. When they arrived at a red traffic signal next to another automobile, defendant Green got out of the other automobile and jumped into the back seat of their convertible. Startled, the women told Green to leave the convertible,

but he refused. Instead, he told them to drive through the intersection, turn at the next street, and stop the car. As they passed through the intersection, Green removed a gun from his shorts. When they pulled over, Green demanded money from the women, who had only $7. Green told them it was not enough and struck the driver in the mouth with the barrel of his gun, knocking out three of her teeth. Then, pursuant to Green's instructions, the women stepped out of the convertible and the driver handed her car keys to Green. Defendant Baker appeared as the women got out of the convertible. Green told the women to strip and Baker said, "Don't make them do that, not here." Green then urinated on the face of the woman who had been driving the convertible. When he finished, he announced that they needed more money and told the women to get back into the convertible. The women rode in the back seat while Green drove with the convertible's top up. Baker sat in the front passenger seat holding the gun. Green stopped the car at a bank machine and, using ATM cards and PIN numbers taken from the women, he withdrew a total of $200 from two accounts.

The group then resumed driving. Baker and Green repeatedly told the women that they were going to kill them. At one point, Green angrily ordered the woman he had urinated on to climb up to the front seat. When she came forward, Baker made her sit in front of him on the floor of the convertible and perform oral sex on him. Green then stopped the convertible and ordered one of the other women to get out. After she stepped out of the car, Green asked her to perform oral sex on him. When she refused, Green hit her face five or six times and pushed her back

into the car. Green then drove the group to a narrow fenced alley behind a school and parked. Baker took the woman who had performed oral sex on him to an area in front of the car, ordered her to lie on the ground, and raped her. At the same time, Green took the second woman he had hit to an area in back of the car, forced her to undress, and then raped her on the trunk of the convertible. The third woman was told to lie in the back seat.

Eventually, all parties entered the car and Green drove to a house near a field. On the way, Baker and Green told the women that they wanted the car radio. They also asked the women if they could have their telephone numbers and be friends. When they arrived at the house, Baker left the car and returned a short time later with a screwdriver. After driving around some more, Baker and Green removed the radio. The defendants then argued about splitting up the money and about who would get the radio. Baker left with the radio and Green wiped down the car with a towel. When he was done, Green told the women they could leave. The women then drove the convertible to a restaurant and called the police. At trial, Green testified on his own behalf. He denied having a gun and urinating on one of the women, and he described the rest of the night's events as being consensual.

DOCKET NO. 194995

Defendant Green first argues that he was denied a fair trial as a result of the trial court's failure to sever the charge of being a felon in possession of a firearm from the other charges against him. We disagree. Because Green did not move to sever the prosecutions or make any sort of objection below, he has

failed to preserve this issue for appeal. See *People v Mayfield*, 221 Mich App 656, 660; 562 NW2d 272 (1997). Therefore, we will review this issue only if necessary to avoid manifest injustice. *Id.* at 661.

Before the selection of the jury, the trial court informed the prospective jury panel that defendant Green had been charged with possessing a firearm when ineligible to do so because of a prior conviction of larceny from a person. During trial, the parties and the trial court addressed the possibility of prejudice stemming from the existence of the felon-in-possession charge. Defense counsel expressed concern that Green might be prejudiced by any mention of the nature of his prior conviction. Accordingly, the parties agreed to stipulate that Green had been convicted of an unspecified prior felony. The jury was so instructed and Green did not object to the instruction. Because the issue was resolved to the apparent satisfaction of all parties at trial, we are hesitant to upset the result of that consensus on appeal. A defendant should not be allowed to assign error on appeal to something his own counsel deemed proper at trial. *People v Roberson*, 167 Mich App 501, 517; 423 NW2d 245 (1988). To do so would allow a defendant to harbor error as an appellate parachute. *Id.*

This Court has explained that "adequate safeguards" can be erected to ensure that a defendant charged with both felon-in-possession and other charges arising from the same incident suffers no unfair prejudice if a single trial is conducted for all the charges. See *Mayfield*, *supra* at 659-660. Specifically, these "safeguards" are (1) the introduction by stipulation of the fact of the defendant's prior conviction, (2) a limiting instruction emphasizing that the

jury must give separate consideration to each count of the indictment, and (3) a specific instruction to consider the prior conviction only as it relates to the felon-in-possession charge. See *id.* at 660, citing *United States v Mebust*, 857 F Supp 609, 613 (ND Ill, 1994). In this case, the fact of Green's prior felony conviction was introduced by stipulation, the specific nature of Green's prior conviction was not mentioned apart from the initial remark to the prospective jury panel, and the trial court instructed the jury that defendants were entitled to a separate determination regarding each of the charges against them. Although the trial court did not give a specific instruction that the stipulation was to be considered only as it related to Green's felon-in-possession charge, Green never requested such an instruction. Because adequate safeguards were in place at trial, manifest injustice will not result from our failure to review this issue. *Mayfield, supra* at 661.

Defendant Green next argues that the felon-in-possession charge violated his right to bear arms under the Michigan Constitution. We disagree. A person's right to bear arms under Const 1963, art 1, § 6 is not absolute and is subject to the reasonable limitations set forth in MCL 750.224f; MSA 28.421(6) as part of the state's police power. *People v Swint*, 225 Mich App 353, 375; 572 NW2d 666 (1997). Accordingly, Green's right to bear arms under the Michigan Constitution was not violated by the felon-in-possession charge.

Next, defendant Green argues that he was denied a fair trial by the prosecutor's alleged mischaracterization of testimony during closing argument. We disagree. When reviewing instances of alleged

prosecutorial misconduct, this Court must examine the pertinent portion of the record and evaluate the prosecutor's remarks in context. *People v McElhaney*, 215 Mich App 269, 283; 545 NW2d 18 (1996). The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial. *Id.* In this case, Green did not object to any of the prosecutor's allegedly improper arguments. Appellate review of improper prosecutorial remarks is generally precluded absent an objection because it deprives the trial court of an opportunity to cure the error. *People v Ullah*, 216 Mich App 669, 679; 550 NW2d 568 (1996). Because a well-tried, vigorously argued case should not be overturned on the basis of a few isolated improper remarks that could have been corrected had an objection been lodged, we will reverse in such instances only if a curative instruction could not have eliminated the prejudicial effect of the improper remarks or where our failure to review the issue would result in a miscarriage of justice. *Id.* After reviewing the alleged instances of prosecutorial misconduct in this case, we conclude that each was either proper argument or proper response to defendant's argument. Moreover, any unfair prejudice produced by the challenged comments would have been cured by the trial court's careful and explicit instructions to the jury that it was required to decide the case on the evidence alone and that the lawyer's statements were not evidence. See *People v Mack*, 190 Mich App 7, 19; 475 NW2d 830 (1991). For these reasons, defendant Green is not entitled to relief with respect to this issue.

Defendant Green next argues that the evidence was insufficient to sustain his conviction of carjacking. We

disagree. When reviewing the sufficiency of the evidence in a criminal case, this Court must view the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992).

The crime of carjacking is statutorily defined as follows:

> A person who by force or violence, or by threat of force or violence, or by putting in fear robs, steals, or takes a motor vehicle as defined in section 412 from another person, in the presence of that person or the presence of a passenger or in the presence of any other person in lawful possession of the motor vehicle, is guilty of carjacking, a felony punishable by imprisonment for life or for any term of years. [MCL 750.529a(1); MSA 28.797(a)(1).]

In order to prove carjacking, the prosecution must prove (1) that the defendant took a motor vehicle from another person, (2) that the defendant did so in the presence of that person, a passenger, or any other person in lawful possession of the motor vehicle, and (3) that the defendant did so either by force or violence, by threat of force or violence, or by putting another in fear. Here, Green argues that he could not have taken the motor vehicle from another person, because the evidence showed that the persons in the vehicle when Green arrived remained with the vehicle for the entire time he was present and left with the vehicle after Green departed. Whether a person may "take" a motor vehicle "from" another person, for purposes of carjacking, by driving it while the other per-

son remains with the vehicle is a question of first impression in Michigan.

When called on to interpret the "presence" requirement of the carjacking statute, this Court adopted the definition of "presence" applied in armed robbery, MCL 750.529; MSA 28.797, and unarmed robbery, MCL 750.530; MSA 28.798. See *People v Raper*, 222 Mich App 475, 482; 563 NW2d 709 (1997). Under this definition, a thing is in the presence of a person if it is so within the person's " ' "reach, inspection, observation or control, that he could, if not overcome by violence or prevented by fear, retain his possession of it." ' " See *Raper, supra* at 482, quoting *People v Beebe*, 70 Mich App 154, 159; 245 NW2d 547 (1976), quoting *Commonwealth v Homer*, 235 Mass 526, 533; 127 NE 517 (1920). In other words, whether the taking of a motor vehicle occurs within the presence of a person, depends on the effect of violence or fear on that person's ability to control his possession of the motor vehicle at the time of its taking. See *Raper, supra* at 482-483. Consistent with this definition of "presence" is the notion that a thing is taken from a person at the time the person loses possession of the thing because of the effect of violence or fear. Moreover, in larceny cases,[1] a taking occurs when the wrongdoer acquires dominion and control (i.e., possession) over the subject property. See 3 Wharton's Criminal Law (15th ed), § 357, pp 412-413 (citing cases); Black's Law Dictionary (6th ed), p 1453 (defining "take"). Accordingly, for purposes of the crime of carjacking, we conclude that a defendant "takes" a motor vehicle "from" another

---

[1] Larceny is a lesser included offense of robbery. See *People v Beach*, 429 Mich 450, 484, n 17; 418 NW2d 861 (1988).

when he acquires possession of the motor vehicle through force or violence, threat of force or violence, or by putting another in fear. This definition is consistent with our interpretation of the "presence" requirement and with the other crimes in the robbery section of the Michigan Penal Code. See *Raper, supra* at 482.

Defining "take" in terms of possession does not require that the victim be physically separated from the motor vehicle. The hallmark of possession is dominion and control. *People v Lavine*, 95 Mich App 200, 201; 290 NW2d 413 (1980); see also *People v Hill*, 433 Mich 464, 470-471; 446 NW2d 140 (1989). Here, the victims testified that defendant Green entered their convertible without being invited to do so, refused to leave when asked, struck the driver in the mouth with a gun, ordered her to hand over the car keys, and threatened to kill them. After obtaining the car keys, Green drove the car to various locations against the will of the women, who were ordered to remain in the convertible. Green took possession of the convertible by exercising his dominion and control over it. The presence of the victims did not diminish Green's exercise of possession. Accordingly, we hold that a rational trier of fact could have found the elements of carjacking proved beyond a reasonable doubt. *Wolfe, supra*, 440 Mich 515.

Finally, Green argues that there was insufficient evidence of the element of asportation to support his kidnapping convictions. We disagree. Although not mentioned in the statute, asportation of the victim is a judicially required element of the crime of kidnapping by forcible confinement or imprisonment. *People v Jaffray*, 445 Mich 287, 298; 519 NW2d 108 (1994). To establish the element of asportation, there must be

some movement of the victim taken in furtherance of the kidnapping that is not merely incidental to the commission of another underlying lesser or coequal crime (unless the underlying crime involves murder, extortion, or taking a hostage). See *People v Barker*, 411 Mich 291, 299-302; 307 NW2d 61 (1981); *People v Murph*, 185 Mich App 476, 479-480; 463 NW2d 156 (1990), *(On Rehearing)*, aff'd and remanded in part on other grounds, 190 Mich App 707 (1991). Here, the victims testified that Green drove them against their will to several different unfamiliar locations for a period of about two hours. Their testimony further showed that, during this period of confinement, Green and Baker robbed the women, sexually assaulted two of them in an alley behind a school, and took their car radio. On this evidence, a rational trier of fact could have found that the movement of the victims was in furtherance of the kidnappings and that the other crimes merely occurred during the course of the kidnappings. Cf. *People v Sawyer*, 222 Mich App 1, 5-6; 564 NW2d 62 (1997); *Murph, supra*, 185 Mich App 478-480; *People v Gwinn*, 111 Mich App 223, 243-244; 314 NW2d 562 (1981); *People v Hardesty*, 67 Mich App 376, 378-379; 241 NW2d 214 (1976). Accordingly, we hold that the evidence was sufficient to support Green's kidnapping convictions. *Wolfe, supra*, 440 Mich 515.

DOCKET NO. 195607

Defendant Baker first contends that the court erred in denying his motion for a directed verdict regarding the charge of carjacking. We disagree. At the conclusion of the testimony, defendant Baker moved for a directed verdict regarding the charge of carjacking,

arguing that the evidence did not support a finding that Baker intended to permanently deprive the victims of their motor vehicle. Baker repeats this argument on appeal. However, because an intent to permanently deprive is not an element of the crime of carjacking, *People v Terry*, 224 Mich App 447, 455; 569 NW2d 641 (1997), Baker's argument is without merit.

Baker next argues that his sentences as an habitual offender violate the principle of proportionality because the trial court failed to account for the likelihood of rehabilitation. We disagree. Sentencing decisions are subject to review by this Court under an abuse of discretion standard. *People v Milbourn*, 435 Mich 630, 635-636; 461 NW2d 1 (1990). A sentence constitutes an abuse of the trial court's discretion if it violates the principle of proportionality. The principle of proportionality requires sentences to be "proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Id.* at 636. When a defendant is sentenced as an habitual offender, the sentencing guidelines have no bearing with regard to whether an abuse of discretion has occurred. *People v Edgett*, 220 Mich App 686, 694; 560 NW2d 360 (1996). Moreover, the consecutive nature of a defendant's sentences is irrelevant to the determination whether his sentences are excessive. *People v Warner*, 190 Mich App 734, 736; 476 NW2d 660 (1991). In this case, contrary to Baker's assertion, the sentencing transcript indicates that the trial court addressed Baker's possibility for rehabilitation and concluded that rehabilitation was not possible. Considering the extreme circumstances of the offenses, we hold that the trial court did not abuse its discretion in sentencing defendant Baker.

Next, Baker argues that the trial court erred in failing to vacate the underlying convictions before sentencing Baker as an habitual offender. We disagree. Under a former version of MCL 769.13; MSA 28.1085,[2] a trial court was required to vacate a defendant's underlying sentence before sentencing him as an habitual offender if the defendant's habitual offender status was determined *after* the imposition of his sentence for the underlying conviction. *People v Hardin*, 173 Mich App 774, 777-778; 434 NW2d 243 (1988); *People v Hambrick*, 169 Mich App 554, 556-557; 426 NW2d 702 (1988). In this case, Baker was sentenced as an habitual offender pursuant to the current version of MCL 769.13; MSA 28.1085, which does not specifically provide for the vacation of a defendant's underlying convictions or sentences in any circumstance.[3] Therefore, his reliance on the former version of the statute is misplaced. In any event, because Baker's habitual offender status was determined at the sentencing hearing following his trial for the underlying convictions, there would have been no reason to undertake the requested procedure. See *Hardin, supra* at 778.

Baker also argues that the trial court failed to afford either him or his counsel the right of allocution. However, a review of his sentencing transcript reveals that the court did afford both Baker and his

---

[2] MCL 769.13; MSA 28.1085 was amended by 1994 PA 110, which became effective on May 1, 1994.

[3] Under the amended version of the statute, a defendant's habitual offender status must be determined at or before the sentencing hearing following trial for the underlying convictions. MCL 769.13(5); MSA 28.1085(5). Consequently, the situation requiring the vacation of a defendant's underlying sentences under the former version of the statute could not arise under the amended version of the statute.

counsel the right of allocution in accordance with MCR 6.425(D)(2)(c). Accordingly, Baker's argument lacks merit.

Finally, Baker argues that he was never convicted of or declared to be an habitual offender before sentencing. Under MCL 769.13(5); MSA 28.1085(5), the existence of the defendant's prior conviction or convictions must be determined by the trial court at sentencing or at a separate hearing for that purpose before sentencing. *People v Zinn*, 217 Mich App 340, 345; 551 NW2d 704 (1996). The existence of a prior conviction may be established by any evidence that is relevant for that purpose, including information contained in the presentence report. MCL 769.13(5)(c); MSA 28.1085(5)(c). In this case, the presentence report listed Baker as a second-offense habitual offender and included details of Baker's prior felony conviction. Moreover, at the beginning of Baker's sentencing hearing, the trial court explicitly recognized Baker as an habitual offender. Therefore, we hold that the trial court met the requirements of MCL 769.13(5)(c); MSA 28.1085(5)(c) in sentencing Baker.

Affirmed.