# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
May 10, 2016

v

DAVONTAH LEE NELSON,

Defendant-Appellant.

No. 326343
Washtenaw Circuit Court
LC No. 13-001632-FC

Before: HOEKSTRA, P.J., and O'CONNELL and MURRAY, JJ.

PER CURIAM.

Defendant, Davontah Lee Nelson, appeals as of right his convictions, following a bench trial, of first-degree felony murder, MCL 750.316(1)(b), and first-degree child abuse, MCL 750.136b(2). The trial court sentenced him to serve life imprisonment without parole for his felony murder conviction and to 120 to 180 months' imprisonment for his first-degree child abuse conviction. We affirm.

## I. FACTUAL BACKGROUND

The victim, Amareah, was almost five months old when she died while in Nelson's care on October 9, 2013. Amareah's pediatrician testified that she was healthy in August 2013. Amareah's mother testified that she and Nelson lived together with their two children, and she left Amareah with Nelson to go to work. Gavin Witten testified that at some point that evening he heard ten or fifteen repetitive thudding noises come from Nelson's apartment.

Firefighter Dan Kimball testified that he was dispatched to Nelson's apartment at about 7:00 p.m. According to Kimball, Amareah was lying on the floor with no pulse or breathing, and he began performing CPR. Nelson stated to Kimball that the baby was on the floor when he woke from a nap on the couch. According to Deputy Sherriff Jesse Smith, Nelson stated that he woke from his nap and saw his nearly two-year-old son holding Amareah around her neck. Detective Michael Babycz testified that when he interviewed Nelson at the hospital, Nelson stated that he fell asleep on the couch and, when he woke, he saw his son holding Amareah to his chest with his arms around her. During a later interview, Detective Craig Raisanen testified that Nelson stated that he tried to give Amareah a bottle but she was being fussy and, out of frustration, he pushed Amareah off the bed and she hit her head on the floor. Detective Raisanen detailed several different versions of events that Nelson gave various investigators, which included that Nelson "was hammering" Amareah's chest while trying to perform CPR.

-1-

Though CPR did restart Amareah's heart and breathing, she was removed from life support when doctors determined she had no chance of recovering from her injuries. Amareah died at around 11:00 p.m. that evening.

According to Nelson, who testified at trial, he was in bed with Amareah and trying to give her a bottle when he drifted off to sleep. When he woke up, he noticed that Amareah was falling off the bed, he saw her go over the side, and Amareah was not breathing after she landed on the floor. While performing CPR, he pounded on Amareah's chest, hoping that it would clear her airway or restart her heart. Nelson testified that he told people different things during interviews to get them to stop questioning him.

Washtenaw County Medical Examiner Jeffrey Jentzen testified that he performed an autopsy on Amareah and discovered that she had a lacerated liver, a skull fracture, cranial hemorrhaging, and brain swelling. Jentzen testified that Amareah's specific brain injuries most commonly resulted from high-velocity injuries. Peter Strouse, a pediatric radiologist, testified that x-rays and CT scans of Amareah showed that she had 19 bone fractures in various states of healing, including 15 rib fractures, a skull fracture, and fractures to bones in her arms, legs, and hands. Strouse opined that Amareah's rib fractures were consistent with child abuse and that, while fractures can occur from CPR, CPR did not explain the placement of Amareah's specific fractures. In contrast, Oakland County Chief Medical Examiner Ljubisa Dragovic testified that the injuries to Amareah's chest and abdomen were consistent with "vigorous resuscitation efforts." However, Dragovic testified that a fall of the nature that Nelson described did not explain the victim's skull fracture.

At trial, Amareah's mother testified that Nelson had previously committed domestic violence against her and Amareah's brother. Amareah's mother testified that Nelson would sometimes "snap" and punch, kick, or choke her. She also observed marks on Amareah's brother and, when she confronted Nelson, Nelson stated that he had spanked the toddler with a belt. However, Amareah's mother never saw Nelson act violently toward Amareah.

The trial court found Nelson guilty of first-degree child abuse and felony murder. Specifically, it found that Nelson had repeatedly lied about the events leading to Amareah's death and that the evidence was consistent with Nelson throwing or punching Amareah to death.

## II. DOUBLE JEOPARDY

Nelson contends that his convictions of both first-degree child abuse and felony murder violate his constitutional rights protecting him from receiving multiple punishments for the same offense. We disagree.

To preserve an issue, the appellant must challenge it before the trial court on the same grounds as he challenges it on appeal. *People v Kimble*, 470 Mich 305, 309; 684 NW2d 669 (2004). Nelson did not raise this issue before the trial court and, accordingly, it is unpreserved. This Court reviews unpreserved errors for plain error affecting the defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

The Fifth Amendment of the United States Constitution protects a criminal defendant from being "twice put in jeopardy of life or limb . . . ." US Const, Am V; *People v Szalma*, 487

Mich 708, 715-716; 790 NW2d 662 (2010). In part, this provision protects a criminal defendant against multiple prosecutions for the same offense. *People v Ream*, 481 Mich 223, 227; 750 NW2d 536 (2008). When a defendant's conduct violates two different statutes, this Court must determine whether the offenses have the same elements. *Id*. at 240. If each offense requires proof of a fact that the other does not, multiple convictions do not violate a defendant's right against double jeopardy. *Id*. at 227.

When comparing the elements of first-degree child abuse and felony murder, each offense requires proof of facts that the other offense does not. "The elements of first-degree child abuse are (1) the person, (2) knowingly or intentionally, (3) causes serious physical or mental harm to a child." *People v Gould*, 225 Mich App 79, 87; 570 NW2d 140 (1997). In contrast,

> [t]he elements of felony murder are (1) the killing of a person, (2) with the intent to kill, do great bodily harm, or create a high risk of death or great bodily harm with the knowledge that death or great bodily harm was the probable result, (3) while committing, attempting to commit, or assisting in the commission of an enumerated felony. [*People v Lane*, 308 Mich App 38, 57-58; 862 NW2d 446 (2014).]

The elements of first-degree child abuse require the prosecution to show that the defendant knowingly or intentionally caused serious harm to a child. The elements of felony-murder require the prosecution to show that the defendant killed someone. While the facts necessary to support these elements may substantially overlap, the elements themselves are different. Accordingly, we conclude that a defendant's right to be free from double jeopardy is not violated when the defendant is convicted of both first-degree child abuse and felony murder.

## III. OTHER ACTS EVIDENCE

Nelson contends that the trial court improperly admitted evidence of Amareah's prior injuries and of Nelson's acts of domestic violence against Amareah's mother and brother. We disagree.

Generally, this Court reviews for an abuse of discretion preserved challenges to the trial court's evidentiary rulings. *People v Duncan*, 494 Mich 713, 722; 835 NW2d 399 (2013). The trial court abuses its discretion when its decision falls outside the range of principled outcomes. *Id*. at 722-723. We review de novo the preliminary questions of law surrounding the admission of evidence, such as whether a rule of evidence bars admitting it. *Id*. at 723. We review unpreserved errors for plain error affecting the defendant's substantial rights. *Carines*, 460 Mich at 763.

First, Nelson contends that the evidence was not admitted for a proper purpose. However, defense counsel addressed the proposed evidence at trial, stating, "It can be brought in to rebut accident, which we're clearly pleading here, so it can come in for that purpose, but it's supposed to be limited and not be used to prove defendant himself did the things that are alleged." A defendant may not "assign error on appeal to something his own counsel deemed

proper at trial." *People v Green*, 228 Mich App 684, 691; 580 NW2d 444 (1998). We conclude that Nelson has waived review of whether the other acts evidence had a proper purpose.

Second, Nelson contends that admission of this evidence was substantially more prejudicial than probative.

MRE 403 applies to evidence of other acts. See *People v Watkins*, 491 Mich 450, 481; 818 NW2d 296 (2012). MRE 403 provides that, even if evidence is relevant, the trial court may not admit it if the danger of its prejudicial effect substantially outweighs its probative value. The prejudicial effect of the evidence substantially outweighs its probative value when evidence is only marginally probative and there is a danger that the trier of fact may give it undue or preemptive weight. *People v Crawford*, 458 Mich 376, 398; 582 NW2d 785 (1998). Evidence is probative if it has *any* tendency to make a fact of consequence more or less probable. *Id*. at 389-390. It is particularly important that the appellant preserve challenges to the relevance of evidence under MRE 403 because the trial court has the best opportunity to contemporaneously assess these relative weights. *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008).

In this case, evidence of Nelson's other acts of violence against Amareah's mother and brother tended to make it more likely that Nelson intentionally injured Amareah. Specifically, the evidence tended to show that Nelson could "snap" when he became angry, making it more likely that Nelson injured Amareah, with whom he was frustrated on the night in question. And the evidence that Amareah had healing fractures from previous injuries tended to show a pattern and made it less likely that Amareah's injuries were accidental rather than intentional. We conclude that this evidence was highly probative.

Additionally, there is no indication that the trial court gave the evidence undue or preemptive weight. The evidence was not particularly gruesome or shocking, and the trial court was not likely to misuse the evidence. See *People v Lanzo Constr Co*, 272 Mich App 470, 484-485; 726 NW2d 746 (2006); *People v Taylor*, 245 Mich App 293, 305; 628 NW2d 55 (2001). There is no indication that the trial court gave this evidence undue or preemptive weight.

We conclude that the trial court did not err by admitting other acts evidence.

IV. SUFFICIENCY

Nelson contends that insufficient evidence supported his convictions because there was no evidence that he knowingly or intentionally harmed Amareah. We disagree.

A claim that the evidence was insufficient to convict a defendant invokes that defendant's constitutional right to due process of law. *People v Wolfe*, 440 Mich 508, 514; 489 NW2d 748 (1992); *In re Winship*, 397 US 358, 364; 90 S Ct 1068; 25 L Ed 2d 368 (1970). This Court reviews de novo a defendant's challenge to the sufficiency of the evidence supporting his or her conviction. *People v Wilkens*, 267 Mich App 728, 738; 705 NW2d 728 (2005). We review the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could find that the prosecution proved the crime's elements beyond a reasonable doubt. *Id*. Circumstantial evidence and reasonable inferences arising from that evidence can sufficiently prove the elements of a crime, including the defendant's state of mind, knowledge, or intent. *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008).

As previously discussed, that the defendant knowingly or intentionally caused serious physical harm to a child is one of the elements of first-degree child abuse. *Gould*, 225 Mich App at 87. This requires the prosecution to show that defendant either intended to cause serious physical harm, or knew that serious physical harm would result from the defendant's actions. *People v Maynor*, 470 Mich 289, 291; 683 NW2d 565 (2004).

In this case, circumstantial evidence provided sufficient proof that Nelson knowingly or intentionally harmed Amareah. A witness heard loud banging coming from Nelson's apartment shortly before Amareah was found dead of injuries that were consistent with high-velocity impacts. Amareah's small body had 19 bone fractures in various states of healing. Amareah's mother testified that Nelson could "snap" when angry and strike her, and that he had struck his young son with a belt. Detective Raisanen testified that Nelson stated he became frustrated with Amareah that evening because she was fussy and would not take a bottle. Nelson changed his version of events several times, and the trial court was justified in finding that the version in which he gave Amareah vigorous CPR lacked credibility. Viewing the evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could conclude that Nelson knowingly or intentionally harmed Amareah.

We affirm.

/s/ Joel P. Hoekstra
/s/ Peter D. O'Connell
/s/ Christopher M. Murray