*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

TYROME KENNEY,

Defendant-Appellant.

UNPUBLISHED
August 1, 2019

No. 339628
Wayne Circuit Court
LC No. 16-007471-02-FC

Before: GADOLA, P.J., and BOONSTRA and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals as of right his jury conviction of conspiracy to commit home invasion, MCL 750.110a(2) and MCL 750.157a, attempted first-degree home invasion, MCL 750.110a(2) and MCL 750.92, and possession of a firearm during the commission of a felony, MCL 750.227b. The trial court sentenced defendant to concurrent prison terms of 5 to 20 years for the conspiracy conviction and three to five years for the attempted home invasion conviction, consecutive to a two-year term of imprisonment for the felony-firearm conviction. We affirm.

Defendant's convictions arise from his participation, together with six accomplices, in a plan to break into the Detroit home of Cynthia Henderson in the early morning hours of June 15, 2016. These events were put in motion by a teenage girl, DJC, who was angry at Henderson's daughter, Tai-Yah Rose, for not returning her affection. She concocted a plan to have Rose kidnapped. Posing as "Pablo Skywalkin," the stage name of a local rapper reputed to be a member of the gang known as "Loaf Gang," DJC used Facebook Messenger to contact Deshawn Witlow, who responded to a post suggesting that he could make $1,000 if he would break into Henderson's home, steal the valuables, then kidnap Rose and rape her, and deliver her to "Pablo's sister" at a designated meeting place. Believing the message to be from Pablo, and hoping for membership in Loaf Gang, Witlow accepted the offer and recruited three friends to commit the crimes with him. He also contacted another commenter on "Pablo's" Facebook page, William Phelps, who agreed to provide the transportation for the crime in exchange for payment.

On the morning of June 15, 2016, Phelps, together with defendant and defendant's cousin, Maurice Johnson, drove Johnson's SUV to Inkster to pick up Witlow and his three companions, then drove to Henderson's house where Witlow, his three friends, and defendant, who was armed with a gun, got out of the SUV and attempted to break into Henderson's house. Their entry was foiled by bars on the windows and the quick arrival of the police. At trial, defendant denied knowing Witlow or his three companions, and maintained that he was merely a passenger in Phelps's vehicle and was unaware of any planned criminal activity. He admitted possessing a firearm, for which he had a concealed pistol license, but denied that he used it during the attempt to break into the victims' house.

## I. EFFECTIVE ASSISTANCE OF COUNSEL

Defendant first argues that defense counsel was ineffective for failing to move in limine to exclude evidence of gang affiliation, which defendant contends was irrelevant and prejudicial, and for failing to timely object to this evidence at trial. Because defendant failed to raise an ineffective assistance of counsel claim in the trial court in a motion for a new trial or request for an evidentiary hearing, our review of this issue is limited to mistakes apparent from the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). "To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013) (citation omitted). "To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *Id*.

The effective assistance of counsel is presumed, and the burden is on the defendant to establish otherwise. *People v Roscoe*, 303 Mich App 633, 644; 846 NW2d 402 (2014). "Reviewing courts are not only required to give counsel the benefit of the doubt with this presumption, they are required to 'affirmatively entertain the range of possible' reasons that counsel may have had for proceeding as he or she did." *People v Gioglio (On Remand)*, 296 Mich App 12, 22; 815 NW2d 589 (2012), vacated in part on other grounds 493 Mich 864 (2012).

Generally, all relevant evidence is admissible unless otherwise prohibited by the rules of evidence or the state or federal constitutions. MRE 402; *People v Sharpe*, 319 Mich App 153, 163; 899 NW2d 787 (2017). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. However, even if evidence is relevant, it "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." MRE 403.

We agree that in this case defense counsel's failure to seek to suppress the references to defendant's possible gang membership was not objectively reasonable. Evidence concerning gang membership is relevant when there is evidence that a crime is gang-related. See *People v Bynum*, 496 Mich 610, 625-626; 852 NW2d 570 (2014). The issue of gang affiliation was not irrelevant to the facts of this case. Witlow testified that his motivation for committing the crime was money and his hope that he would become a member of Loaf Gang. He further testified that he was led to believe that defendant was a member of Loaf Gang who had been sent to oversee the crimes. However, although the topic of gang affiliation was not irrelevant to the facts of this

case, there was no evidence that defendant was a gang member, and counsel's failure to seek to exclude, or timely object to, the suggestion that defendant was a gang member exposed defendant to the risk that the jury would conclude that he was predisposed to commit the crime. See *id*. at 630.

However, defendant has not demonstrated that he was prejudiced by counsel's failure in this regard. First, considering the weight of the evidence presented at trial, no reasonable likelihood exists that defendant would not have been convicted without the references to gang membership. Defendant's accomplices testified that defendant participated in conversations about carrying out the home invasion and robbery, that defendant stated that he would tie Rose up and use his gun to hold her and Henderson on the floor while accomplices stole items from the house, and that defendant was holding a black and silver gun as they attempted to break into the house. After the attempted break-in, police found defendant's wallet on the ground next to Henderson's house, where his accomplices had placed him, and phone records indicated that defendant was in the vicinity of the crime scene for nearly one hour during the same period that the criminal episode was taking place. Defendant's accomplices described defendant's gun to police, and the description matched the firearm that was recovered from defendant when he was arrested.

Further, the prosecution did not argue to the jury that it should use the gang evidence to conclude that defendant was guilty of the charged crimes. In addition, defense counsel competently elicited from prosecution witnesses that there was no evidence that defendant was actually a member of any gang. During closing argument, defense counsel aptly reminded the jury that the prosecution witnesses had admitted that the case was not gang-related, and used those admissions to argue that the prosecutor was using "smoke and mirrors" to evoke passion to cause the jurors to mischaracterize defendant and be prejudiced against him.

In sum, to the extent that defense counsel's failure to exclude or timely object to the evidence of defendant's possible gang affiliation was not objectively reasonable, given the evidence presented at trial, the fact that the prosecutor did not encourage the jury to use the gang evidence for an improper purpose, and defense counsel's handling of the evidence at trial, there is no reasonable probability that this evidence affected the outcome of defendant's trial.

## II. SCORING OF OFFENSE VARIABLE 4

Defendant also contends that the trial court erroneously scored offense variable (OV) 4 of the sentencing guidelines. We disagree. To preserve a challenge to the scoring of the sentencing guidelines, the challenge must be raised at sentencing, in a proper motion for resentencing, or in a proper motion to remand filed in this Court. MCL 769.34(10); MCR 6.429(C); *People v Jones*, 297 Mich App 80, 83; 823 NW2d 312 (2012). Because defendant did not so challenge the scoring of OV 4, this claim is not preserved for appeal. We review unpreserved scoring challenges for plain error affecting defendant's substantial rights. *People v Anderson*, 322 Mich App 622, 634; 912 NW2d 607 (2018).

In addition to this issue being unpreserved, this claim of error is waived. At sentencing, defense counsel confirmed that he was not challenging the scoring of OV 4 at ten points. "A defendant should not be allowed to assign error on appeal to something his own counsel deemed

-3-

proper at trial. To do so would allow a defendant to harbor error as an appellate parachute." *People v Green*, 228 Mich App 684, 691; 580 NW2d 444 (1998) (citation omitted). By acknowledging that he was not challenging the 10-point score for OV 4, defendant waived this issue, extinguishing any error. *People v Carter*, 462 Mich 206, 215-216; 612 NW2d 144 (2000).

Even if this claim were not waived, however, the record clearly supports the 10-point score for OV 4. Under MCL 777.34(1), the trial court is required to score 10 points for OV 4 if a "[s]erious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a). The statute does not require that the victim actually receive professional treatment in order to assess 10 points. MCL 777.34(2). Because MCL 777.34 does not specifically direct otherwise, an assessment for OV 4 is limited solely to considering the conduct during the sentencing offense. *People v Biddles*, 316 Mich App 148, 167; 896 NW2d 461 (2016).

The trial court may consider all record evidence, including the contents of a PSIR, when calculating sentencing guidelines. *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015). It may also properly rely on inferences that arise from the record evidence when making the findings underlying its scoring of offense variables. *People v Earl*, 297 Mich App 104, 109; 822 NW2d 271 (2012). Here, evidence indicated that defendant participated in discussions about a plot to break into the victims' house and rob the victims. According to witnesses, defendant agreed with his co-conspirators that he would use his gun to hold the victims on the floor. Then, armed with the gun, he, Witlow, and Witlow's three companions attempted to break into the home by pulling on a side door and using rocks to break windows. The victims heard glass breaking, saw several men outside their house, and made several calls to the police as they waited to see if the intruders would gain entry into their home. In her oral statement at sentencing, Henderson detailed the effect of this criminal episode, including defendant's specific conduct, on her and her daughter. Henderson explained that she and her daughter continue to have nightmares about this incident. Sufficient evidence supports that Henderson and her daughter both suffered actual psychological injuries that required professional treatment.

Defendant does not dispute that Henderson and her daughter suffered serious psychological injuries requiring professional treatment, but instead attempts to disassociate his conduct from those injuries. However, Henderson's explanation of the psychological trauma that she and her daughter experienced because of this offense expressly referenced defendant's role in the offense, including the fact that he was the person who was armed with a gun and her belief that if "he got in my house with that gun then there would have been a lot of dead bodies in that home that night." Thus, the evidence supports the 10-point score for OV 4.

We also reject defendant's related claim that defense counsel was ineffective for failing to object to the 10-point score for OV 4. The record contains sufficient evidence to support the 10-point score for OV 4, such that any objection by defense counsel would have been futile.

"Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Consequently, defendant cannot establish that defense counsel was ineffective for failing to object to the scoring of OV 4.

        Affirmed.


        /s/ Michael F. Gadola
        /s/ Mark T. Boonstra
        /s/ Brock A. Swartzle