*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CHRISTOPHER LEWIS GREER,

        Defendant-Appellant.

UNPUBLISHED
March 19, 2026
12:24 PM

No. 368476
Wayne Circuit Court
LC No. 22-005699-01-FC

Before: RICK, P.J., and YATES and MARIANI, JJ.

PER CURIAM.

Defendant, Christopher Lewis Greer, lived in an apartment with Dominique Parchman and her sister, Shyanna Hall. On January 5, 2022, Parchman and Hall were both killed in the apartment by gunshots. Defendant was charged with killing them, and a jury found him guilty of two counts of first-degree murder, MCL 750.316(1)(a), possession of a firearm by a person with a "specified felony" conviction (felon-in-possession), MCL 750.224f(2), and three counts of carrying a firearm in the commission of a felony (felony-firearm), MCL 750.227b(1). For his crimes, defendant was sentenced to serve life in prison without parole for each of the first-degree murder convictions and additional prison terms for his other four offenses of conviction. We affirm.

## I. FACTUAL BACKGROUND

Defendant and Parchman had been in a dating relationship for many years, and they shared an apartment with Parchman's sister at the time that Parchman and her sister were killed. On the day of the shootings, January 5, 2022, Parchman had a long telephone conversation with her sister-in-law, Shantarius Walters. During that telephone call, Walters heard defendant repeatedly enter and leave the room where Parchman was on the phone. Defendant kept pestering and questioning Parchman. After Walters heard defendant yelling and "carrying on," she heard a "thud" followed by gunshots. After that, Walters heard "two gasps for air and then it stopped."

Because Walters heard gunshots, she called Parchman's sister, Shantinique, and told her to go to the apartment. Shantinique took her gun and pocket knives in a backpack, but she never took the knives out of her backpack. As Shantinique entered the apartment, Hall was moaning in pain. When Hall saw Shantinique, Hall "started crying" and said defendant "shot them." Parchman was

-1-

not moving and had a faint pulse. Shantinique called the police and waited in the apartment until they arrived. Shantinique did not see any knives in the area where she found Hall and Parchman.

When police officers arrived on the scene, they took Shantinique's two pocket knives, but no other knives were "found out in the open" in the apartment. A subsequent medical examination determined that Parchman had eight gunshot wounds on her back, left shoulder, left thumb, thighs, and right lower leg, and Hall had six gunshot wounds on her chest, left shoulder, stomach, and left thigh. Those gunshot wounds caused the deaths of Parchman and Hall.

After the shooting, defendant left his gun at his brother's house. When defendant learned that Parchman and Hall had died, he drove to Arkansas "to work odd jobs to save some money for a lawyer." On January 11, 2022, defendant was charged with the murders of Parchman and Hall. He was arrested in Arkansas in June 2022 and brought back to Michigan to face the charges.

At trial, defendant testified that he and Parchman argued "about cheating or . . . something of the sort." He said that Parchman and Hall blocked him from leaving through the front and back doors of the apartment. Defendant claimed that Parchman pulled out a pocket knife from a clip on her shorts, and Hall had a knife in her hand. According to defendant, Parchman said: "I'm gonna kill you." Defendant replied, "say that again." Then Parchman and Hall charged him. He claimed Parchman held a knife "in a stabbing motion . . . ." Defendant fired his gun at Parchman and Hall, then "froze up and . . . just continued to keep shooting." He stated that he could not "run past them because if I run past I had to pass one of them and they was [sic] gonna stab me." Surveillance video from the hallway outside the apartment did not depict how the shooting took place because the apartment door was closed, but the video recording revealed that the first two shots were fired at 9:15:38 p.m., and at least 11 more shots were fired between 9:15:52 p.m. and 9:16:23 p.m.

During defendant's trial, the trial court admitted a certified copy of defendant's July 2008 conviction for attempted carrying a concealed weapon. In its instructions to the jury, the trial court told the jurors that they could consider second-degree murder as a lesser included offense of first-degree murder, and the trial court also gave the jury instructions on self-defense, but the trial court did not instruct the jury on voluntary manslaughter. In addition, the trial court instructed the jury that, to convict defendant of felon-in-possession, the jury had to find that defendant had previously been convicted of the crime of "attempt [sic] carrying a concealed weapon, specified felony."

The jury convicted defendant of all counts, and the trial court sentenced defendant to prison terms for his six offenses. After defendant filed this appeal of right, he moved in the trial court for a new trial or a *Ginther*[1] hearing, arguing that he was denied effective assistance of counsel because the evidence supported a jury instruction on voluntary manslaughter. Defendant contended he was prejudiced because a reasonable jury could have found that he acted out of passion after Parchman provoked him. Defendant's appellate counsel attached an offer of proof, alleging that trial counsel told appellate counsel that he did not consider voluntary manslaughter when investigating the case. Trial counsel allegedly admitted that he should have presented a theory of voluntary manslaughter, and he "agreed that leaving voluntary manslaughter out of the jury instructions was not a strategic decision." The trial court denied the motion for a new trial, ruling that defendant's testimony, even

---

[1] See *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

if true, did not show he acted out of passion or based on provocation. Defendant was not deprived of effective assistance of counsel because not advancing the theory of voluntary manslaughter was objectively reasonable.[2] Defendant challenges his convictions, but not his sentences, on appeal.

## II. LEGAL ANALYSIS

Defendant raises two issues on appeal. First, he claims he was denied effective assistance of counsel because his trial attorney should have presented a voluntary manslaughter theory at trial and asked for a jury instruction on voluntary manslaughter. Second, he argues that the trial record lacks sufficient evidence to support a felon-in-possession charge, so that conviction and the felony-firearm conviction related to that charge cannot stand. We shall address these two issues in turn.

## A. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant insists that he was denied the right to effective assistance of counsel because his trial attorney failed to advance a voluntary manslaughter theory at trial and failed to request a jury instruction on voluntary manslaughter. A claim of ineffective assistance of counsel raises a mixed question of fact and constitutional law. *People v Hoang*, 328 Mich App 45, 63; 935 NW2d 396 (2019) (quotation marks and citation omitted). We review a trial court's findings of fact for clear error, whereas constitutional issues are reviewed de novo. *Id*.

To obtain a new trial, defendant must first show that his counsel's performance "fell below an objective standard of reasonableness . . . ." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012) (citations omitted). Second, defendant must show that counsel's deficient performance prejudiced him, meaning that there must be "a reasonable probability that the outcome would have been different" if defense counsel had satisfied the constitutional standard of effective assistance. *Id*. (citations omitted). Defendant has not satisfied either of those two requirements.

### 1. DEFICIENT PERFORMANCE

Defendant argues his counsel mishandled the issue of voluntary manslaughter in presenting the case to the jury and by failing to ask for a jury instruction on voluntary manslaughter. Pursuant to settled Michigan law, manslaughter "is a necessarily included lesser offense of murder." *People v Gillis*, 474 Mich 105, 137; 712 NW2d 419 (2006). The one element distinguishing murder from manslaughter is malice, i.e., "an intent to kill, an intent to commit great bodily harm, or an intent to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result." *Id*. at 138 (quotation marks and citations omitted). For a killing to be considered voluntary manslaughter, not murder, "the defendant must kill in the heat of passion, the passion must be caused by adequate provocation, and there cannot be a lapse of time during

---

[2] Defendant moved to remand for a *Ginther* hearing, relying on the same offer of proof he filed in the trial court, but this Court denied defendant's motion to remand "without prejudice to a case call panel of this Court determining that remand is necessary." *People v Greer*, unpublished order of the Court of Appeals, entered September 4, 2025 (Docket No. 368476). For the reasons stated in this opinion, we continue to see no need for a remand to properly adjudicate defendant's claim of ineffective assistance of counsel.

which a reasonable person could control their passions." *People v Yeager*, 511 Mich 478, 489; 999 NW2d 490 (2023). If a defendant is charged with murder, a trial court must give an instruction on voluntary manslaughter if one is supported by a rational view of the evidence. *Id*. at 490.

Defense counsel's failure "to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). In defendant's case, any effort to rely on the theory of voluntary manslaughter would have been futile because a rational view of the evidence plainly did not support a voluntary manslaughter instruction. See *Yeager*, 511 Mich at 490. Defendant said that Parchman and Hall blocked the doors of the apartment and displayed knives. Parchman purportedly threatened to kill defendant, then charged at him before he shot Parchman and Hall. Citing *Yeager*, defendant claims he shot Parchman and Hall in the heat of passion caused by adequate provocation. In *Yeager*, the decedent "physically assaulted [the] defendant, took her car and used it to attempt to run her over, and repeatedly threatened to kill [the] defendant," *id*. at 491-492, so our Supreme Court ruled that a rational view of the evidence supported a voluntary manslaughter instruction. *Id*. at 494. Here, in contrast, defendant never claimed that Hall threatened to kill him or provoked him. Defendant argued with Hall, but such "verbal exchanges . . . are not usually sufficient to constitute adequate provocation." *People v Roper*, 286 Mich App 77, 88; 777 NW2d 483 (2009) (citation omitted). As to Parchman, defendant claimed she charged at him while holding a knife, but the only knives found in the apartment were Shantinique's pocket knives. Defendant did not present evidence of a repeated series of assaults and threats akin to the "adequate provocation" in *Yeager*, 511 Mich at 491-492, so a rational view of the evidence did not show that either Parchman or Hall adequately provoked defendant. Hence, a request for a voluntary manslaughter instruction would have been meritless. Accordingly, defendant has not established that his trial attorney performed deficiently. See *Ericksen*, 288 Mich App at 201.

## 2. PREJUDICE

Even if defense counsel performed deficiently, defendant has not shown that his attorney's failure to pursue a voluntary manslaughter defense or request a voluntary manslaughter instruction prejudiced him. Defendant has to demonstrate "a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51 (citations omitted). We can find no reasonable probability that the jury would have convicted defendant of voluntary manslaughter, as opposed to first-degree murder. "The elements of first-degree murder are (1) the intentional killing of a human (2) with premeditation and deliberation." *People v Bass*, 317 Mich App 241, 265-266; 893 NW2d 140 (2016) (quotation marks and citation omitted). "[T]he circumstances of the killing[,]" including "an interval of time between the initial homicidal thought and ultimate action," can establish premeditation. *Id*. at 266 (quotation marks and citation omitted); *People v Oros*, 502 Mich 229, 242; 917 NW2d 559 (2018). Here, the evidence demonstrated that defendant acted with premeditation when he shot Parchman and Hall. Parchman had eight gunshot wounds, and Hall had six gunshot wounds. Surveillance video contained sounds revealing that defendant fired at least 13 shots. Notably, the first two shots and the remaining shots were separated by a gap of 15 seconds, "which would allow a reasonable person time to subject the nature of his or her action to a second look." *Oros*, 502 Mich at 242 (quotation marks, citations, and footnote omitted). Therefore, the evidence indicated that defendant acted with premeditation and deliberation. He has not shown any probability that the jury would have convicted him of voluntary manslaughter, as opposed to first-degree murder, if they had been given that option.

## B. SUFFICIENCY OF EVIDENCE OF FELON-IN-POSSESSION

Defendant insists that his felon-in-possession conviction must be reversed because his prior conviction of attempted CCW cannot constitute a "specified felony" under MCL 750.224f(2). We must review defendant's challenge to the sufficiency of the evidence de novo. *People v Hawkins*, 245 Mich App 439, 457; 628 NW2d 105 (2001); see also *People v Montague*, 338 Mich App 29, 44; 979 NW2d 406 (2021). In doing so, however, we must review all of the evidence in the light most favorable to the prosecution, and consider "whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt." *People v Harris*, 495 Mich 120, 126; 845 NW2d 477 (2014). That standard obligates us to draw reasonable inferences in favor of sustaining the conviction.[3] *Oros*, 502 Mich at 239. If our analysis requires us to interpret statutes, we review matters of statutory interpretation de novo. *People v Ambrose*, 317 Mich App 556, 560; 895 NW2d 198 (2016) (citation omitted).

Defendant was convicted of felon-in-possession under MCL 750.224f(2) on the theory that he had previously committed a "specified felony." Pursuant to that statute, "[a] person convicted of a specified felony shall not possess . . . a firearm in this state" until five years after the term of imprisonment for the crime has ended.[4] *People v Pierce*, 272 Mich App 394, 396; 725 NW2d 691 (2006). A crime constitutes a "specified felony" when "[a]n element of that felony is the unlawful possession or distribution of a firearm." MCL 750.224f(d)(*iii*).

To decide whether attempted CCW constitutes a "specified felony," we must first consider whether the crime of CCW is a "specified felony," and then we must analyze whether the attempt to commit CCW should be treated just like the offense of CCW itself. In defining the offense of CCW, MCL 750.227(2) states: "A person shall not carry a pistol concealed on or about his or her person, or, whether concealed or otherwise, in a vehicle operated or occupied by the person, . . . without a license to carry the pistol . . . ." To obtain a CCW conviction, a prosecutor "need only show that the defendant knowingly carried a pistol in an automobile or on his or her person . . . ." *People v Brown*, 330 Mich App 223, 230; 946 NW2d 852 (2019). This Court has determined that CCW is a "specified felony." *People v Hughes*, ___ Mich App___, ___; ___ NW3d ___ (2025)

---

[3] The prosecution claims defendant stipulated to the admission of his prior conviction of attempted CCW, so he waived the challenge he now presents on appeal. A defendant waives appellate review of an issue if "defense counsel clearly expresse[d] satisfaction with a trial court's decision[ ]" at trial. *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011). In *People v Green*, 228 Mich App 684, 691; 580 NW2d 444 (1998), the defendant waived his challenge to his felon-in-possession conviction because the parties stipulated to his earlier felony conviction, and he did not object to the trial court's instruction about that stipulation. Defendant did not waive his challenge in this case because defense counsel did not affirmatively stipulate to his earlier felony conviction. Defense counsel simply did not object to the admission of a certified copy of the conviction. More significantly, defense counsel did not agree that defendant's prior conviction of attempted CCW qualified as a specified felony.

[4] Additionally, the person's right to possess a firearm must have been restored under MCL 28.424. MCL 750.224f(2)(b).

(Docket No. 367172) (citations omitted); slip op at 9 n 7.[5] Accordingly, we must begin our analysis by recognizing that the offense of CCW is a "specified felony."

The attempt statute proscribes any "attempt to commit an offense prohibited by law . . . ." MCL 750.92. Hence, to obtain a conviction under that statute for attempted CCW, the prosecution simply must prove that the defendant "attempt[ed] to commit" the offense of CCW. Proof of the completed act of actually carrying a concealed weapon is not necessary. In unpublished decisions, however, this Court has expressly concluded that attempted CCW is a "specified felony." *People v Gordon*, unpublished per curiam opinion of the Court of Appeals, issued June 27, 2006 (Docket No. 261838), p 2; *People v Turner*, unpublished per curiam opinion of the Court of Appeals, issued June 14, 2004 (Docket No. 246712), p 1.[6] Those unpublished decisions relied on *People v Parker*, 230 Mich App 677, 584 NW2d 753 (1998), for the proposition that an attempt to commit a crime that is a "specified felony" must be treated just the same as the commission of the crime itself, so an attempt to commit a "specified felony" is, itself, necessarily a specified felony. *Id*. at 685-687.

This Court arrived at that conclusion in *Parker* by citing the definition of a "felony" in the felon-in-possession statute, which explains that " '[f]elony' means a violation of a law of this state, or of another state, or of the United States that is punishable by imprisonment for a term exceeding 1 year, *or an attempt to violate such a law*." MCL 750.224f(10)(b) (emphasis added). This Court read that language to mean that a "specified felony" includes not only the offense itself that meets the definition of a "specified felony" in MCL 750.224f(10)(d), but also an attempt to commit that offense. *Parker*, 230 Mich App at 686-687. As *Parker* observed, "if an individual is convicted of the attempted violation of law, and that attempt involved" an offense that qualifies as a "specified felony" under the statutory definition of that term, "then such an individual has been convicted of a specified felony under MCL 750.224f[.]" *Id*. Applying the holding of *Parker*, we conclude that defendant's prior conviction of attempted CCW was a "specified felony" that rendered him subject to prosecution for, and conviction of, felon-in-possession under MCR 750.224(f)(2). Hence, the record contains sufficient evidence to support defendant's conviction of felon-in-possession under MCL 750.224(f)(2).

Affirmed.

/s/ Michelle M. Rick
/s/ Christopher P. Yates
/s/ Philip P. Mariani

---

[5] Defendant relies on this Court's unpublished opinion in *People v McGee*, unpublished per curiam opinion of the Court of Appeals, issued December 28, 2023 (Docket No. 363282), pp 7-8, for the proposition that CCW is not a "specified felony." We are bound, however, by this Court's contrary conclusion in *Hughes*, which is a published opinion. See MCR 7.215(C) (contrasting unpublished and published opinions in terms of their precedential effect).

[6] "Unpublished authorities are not binding on this Court but may be considered as persuasive authority." *People v Swenor*, 336 Mich App 550, 563 n 7; 971 NW2d 33 (2021) (citation omitted).