# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JEFFREY ALEXANDER HOGAN,

Defendant-Appellant.

UNPUBLISHED
October 17, 2017

No. 332966
Wayne Circuit Court
LC No. 15-009334-01-FC

Before: GLEICHER, P.J., and FORTH HOOD and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals as of right his convictions of two counts of first-degree criminal sexual conduct, MCL 750.520b(1)(c) (sexual penetration during the commission of another felony). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to a prison term of 75 to 120 years for each conviction, to be served concurrently. We affirm.

## I. BACKGROUND

Defendant was convicted of sexually assaulting the female victim in an alley on the west side of Detroit on the night of June 11, 2001. As the victim was walking down a neighborhood street, defendant walked past her. Shortly thereafter, defendant approached the victim from behind, grabbed her by the neck, and forced her into an alley. Defendant told the victim not to scream, removed the victim's clothes, and ultimately forced his penis into her vagina and then her mouth. Defendant threatened to kill the victim before fleeing. The victim remained in the alley for some time before feeling safe to leave. Eventually, the victim reported the incident to the police, who transported her to a hospital where a sexual assault examination was performed. In 2015, defendant was identified as a suspect through the Combined Offender DNA Index System ("CODIS"). Forensic testing revealed that defendant was the major donor of DNA recovered from the victim's vagina. The victim subsequently identified defendant in a photographic lineup and at trial.

In addition to the charged offenses, the prosecution presented evidence of two other incidents that occurred in 1996 and 1997, in which defendant assaulted two other women, VB and EM. VB testified at trial that, during the early morning hours on August 21, 1997, she was walking on a main street on the west side of Detroit when she met defendant. The two talked and walked together and eventually "cut through" an unfenced backyard. In that yard, defendant grabbed VB around the neck from behind and threw her to the ground. Defendant forced his

-1-

penis into VB's vagina and instructed her to shut up. Before leaving, defendant told VB not to look at him. Forensic evidence introduced at trial indicated that defendant's DNA matched DNA found on VB after the assault.

EM informed the prosecutor that she would testify at trial. The prosecution noticed defendant that EM would testify that, on December 23, 1996, while she was on the west side of Detroit, defendant approached her from behind, grabbed her around her neck, and dragged her into a vacant house. There he made her put her hands against the wall, told her he would kill her if she moved, and forced her to undress. He then forced his penis into her anus and then her vagina. In its opening statement, the prosecution explained that EM would testify. The prosecution presented evidence that defendant's DNA matched DNA found on EM after she was sexually assaulted in 1996. When EM subsequently did not show for trial, defendant moved to instruct the jury, in accordance with M Crim JI 5.12, that it may infer that EM's testimony would have been unfavorable to the prosecution's case. According to defense counsel, this instruction was the "only way" to ensure defendant received a fair trial.

The trial court agreed and instructed the jury in accordance with M Crim JI 5.12. Nevertheless, the jury found defendant guilty of the charged offenses.

## II. ANALYSIS

*Sufficiency of the Evidence.* On appeal, defendant first argues that the evidence was insufficient to establish his guilt of the charged crimes. We disagree. We review de novo a challenge to the sufficiency of the evidence. *People v Bailey*, 310 Mich App 703, 713; 873 NW2d 855 (2015). When ascertaining whether sufficient evidence was presented at trial to support a conviction, this Court must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). Circumstantial evidence and reasonable inferences arising from the evidence can constitute satisfactory proof of the elements of the crime. *People v Brantley*, 296 Mich App 546, 550; 823 NW2d 290 (2012). "[A] reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury's verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

Under MCL 750.520b(1)(c), a person is guilty of first-degree CSC if "he or she engages in sexual penetration with another person" and the "[s]exual penetration occurs under circumstances involving the commission of any other felony." In this case, defendant was charged with engaging in sexual penetration during a kidnapping.[1] As applicable to this case, kidnapping through forcible confinement requires proof of four elements: "(1) a forcible confinement of another within the state, (2) done wilfully, maliciously and without lawful authority, (3) against the will of the person confined or imprisoned, and (4) an asportation of the

---

[1] Because the offenses occurred in 2001, the trial court correctly instructed the jury regarding the elements of a forcible confinement kidnapping as prescribed in MCL 750.349 at that time, before the statute was amended by 2006 PA 159.

victim which is not merely incidental to an underlying crime." *People v Wesley*, 421 Mich 375, 388; 365 NW2d 692 (1984).

In challenging his first-degree CSC convictions, defendant argues only that the necessary element of asportation was not proven beyond a reasonable doubt because the evidence failed to establish any movement of the victim that was not merely incidental to the sexual assaults. The question whether asportation was incidental to another offense is for the jury to decide. *People v Adams*, 389 Mich 222, 238; 205 NW2d 415 (1973). "If the movement adds either a greater danger or threat thereof, that is a factor in considering whether the movement adequately constitutes the necessary legal asportation." *Id.*

Viewed in a light most favorable to the prosecution, the victim's testimony that defendant accosted her from behind, tightly grabbed her by the neck, and then moved her from the public street to a dark alley was sufficient for the jury to find asportation for purposes of kidnapping. This movement was not merely incidental to the sexual assault because defendant moved the victim to a location that presented a greater danger given the alley's isolated and darker location. Further, after sexually assaulting the victim, defendant threatened to kill the victim, and because of those threats, the victim, limited by her fear of being killed, remained in the alley until she felt safe to leave. From this evidence, a rational trier of fact could find beyond a reasonable doubt that defendant moved the victim in a manner not merely incidental to the criminal assaults. *Wesley*, 421 Mich at 388. Accordingly, sufficient evidence supports defendant's convictions.

*Effective Assistance of Counsel.* Defendant next argues that he was denied the effective assistance of counsel at trial because it was defense counsel who introduced the "first" evidence of movement to establish the element of asportation during his cross-examination of the victim. Because defendant did not raise an ineffective assistance of counsel claim in the trial court, our review of this issue is limited to mistakes apparent on the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). "To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013). Defense counsel enjoys wide discretion in matters of trial strategy. *Heft*, 299 Mich App at 83. Accordingly, this Court will not second guess counsel's judgment on how to impeach witnesses and what questions to ask so long as counsel's questioning is part of a reasonable trial strategy. *People v Petri*, 279 Mich App 407, 413; 760 NW2d 882 (2008). "To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *Nix*, 301 Mich App at 207.

The record confirms that on direct examination from the prosecutor the victim testified regarding her movement during the offense and referred to a map of the location to illustrate her movement for the jury. Defense counsel further explored this issue on cross-examination, eliciting additional testimony regarding the asportation element of kidnapping. Defense counsel used this additional testimony to highlight inconsistencies in the victim's story and to discredit her testimony at trial. Accordingly, we conclude that defense counsel's questioning evidenced a clear, and perfectly reasonable, trial strategy. The fact that this strategy did not ultimately prevail does not render counsel's assistance ineffective. *People v Stewart (On Remand)*, 219 Mich App 38, 42; 555 NW2d 715 (1996).

*Other Acts Evidence.* Defendant next argues that the trial court erred by allowing evidence of other uncharged acts against VB and EM to be admitted under MRE 404(b)(1). We disagree. We review a trial court's decision to admit evidence for an abuse of discretion. *People v Bynum*, 496 Mich 610, 623; 852 NW2d 570 (2014). An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes. *People v Lewis*, 302 Mich App 338, 341; 839 NW2d 37 (2013).

"At its essence, MRE 404(b) is a rule of inclusion, allowing relevant other acts evidence as long as it is not being admitted solely to demonstrate criminal propensity." *People v Martzke*, 251 Mich App 282, 289; 651 NW2d 490 (2002). Although MRE 404(b)(1) prohibits "evidence of other crimes, wrongs, or acts" to prove a defendant's character or propensity to commit the charged crime, it permits such evidence for other purposes, "such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material." See *People v Knox*, 469 Mich 502, 509; 674 NW2d 366 (2004). Nonetheless, other acts evidence offered for a proper MRE 404(b) purpose may still be excluded in the trial court's discretion under MRE 403, if its probative value is substantially outweighed by the danger of unfair prejudice to a party. *People v Starr*, 457 Mich 490, 496-498; 577 NW2d 673 (1998).

Here, the challenged evidence was probative of defendant's common scheme, plan, or system of preying on similarly situated female pedestrians on the west side of Detroit. In the other acts and the charged crime, defendant targeted females walking alone in the same general area, late at night, and ultimately attacked the women from behind and forced himself upon them in isolated areas. Defendant instructed the women to remain silent and told them not to look at him as he fled. The commonality of the circumstances of the other acts and the charged offenses were sufficiently similar to allow the jury to infer that defendant had a particular scheme, plan, or system as to how he targeted and assaulted his victims, and how he attempted to evade their identification of him. Accordingly, the evidence was admissible under MRE 404(b)(1).

Moreover, the evidence was not unduly prejudicial such that it should have been excluded under MRE 403. Evidence is not excluded under MRE 403 merely because it is damaging. *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995). Rather, evidence is properly excluded under MRE 403 where there is "a danger that marginally probative evidence will be given undue or pre-emptive weight by the jury," *id*. at 75-76 (internal citation and quotation notation omitted), or when the evidence has a tendency "to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *People v Cameron*, 291 Mich App 599, 611; 806 NW2d 371 (2011).

Here, the striking similarities between the other acts evidence and the evidence of the charged offense renders the other acts evidence highly probative. Further, we are not persuaded that the jury was unable to weigh rationally the other acts evidence and consider it for its proper purpose. The record discloses that the prosecutor focused on the proper purpose for which the evidence was admissible. Moreover, on three separate occasions, the trial court instructed the jury on the proper non-propensity use of the evidence, thereby limiting any potential for unfair prejudice. It is well established that jurors are presumed to have followed the trial court's

instructions. *People v Breidenbach*, 489 Mich 1, 13; 798 NW2d 738 (2011). Accordingly, the trial court did not err by admitting the other acts evidence.

*Defendant's Right of Confrontation.* Defendant next argues that the trial court violated the Confrontation Clause because it did not strike testimony that defendant's DNA matched DNA recovered from EM after EM failed to come to court to testify. We conclude, however, that defendant has waived any claim that the testimony should have been stricken due to the nonappearance of EM.

Defendant did not request that the trial court strike the testimony. Rather, defense counsel specifically requested, and argued for, the missing witness instruction in M Crim JI 5.12. Defense counsel argued that the missing witness instruction was "the only way" defendant's trial could be fair because the testimony regarding DNA found after EM's assault was a bell that could not be unrung. The trial court granted defense counsel's request, over the prosecutor's objection, and instructed the jury as defendant requested. Defense counsel thereafter used EM's failure to appear to suggest in closing argument that defendant's sexual encounter with EM was consensual and that she was added by the prosecution only to bolster the victim's fabricated testimony.

Defendant cannot deem one resolution proper at trial and argue for a different resolution on appeal when the outcome does not turn in his favor. *People v Green*, 228 Mich App 684, 691; 580 NW2d 444 (1998). "To do so would allow a defendant to harbor error as an appellate parachute." *Id*. In this instance, we conclude that, by requesting the missing witness instruction, defendant waived any challenge regarding his right of confrontation and has extinguished any error. *People v Carter*, 462 Mich 206, 215-216; 612 NW2d 144 (2000).

*Sentence.* Lastly, defendant argues that he is entitled to be resentenced because the trial court engaged in impermissible judicial fact-finding to score offense variables (OV) 1, 3, 4, 7, and 10 of the sentencing guidelines. We disagree.

In *People v Lockridge*, 498 Mich 358, 364; 870 NW2d 502 (2015), our Supreme Court held that Michigan's sentencing guidelines were constitutionally deficient, in violation of the Sixth Amendment, to the extent that they required "judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range." To remedy this deficiency, the Court held that the guidelines were advisory only. *Id.* at 365. Under *Lockridge*, however, trial courts are still required to "continue to consult the applicable guidelines range and take it into account when imposing a sentence" and are permitted to score the OVs using judicially-found facts. *Id.* at 392 and n 28.

As this Court explained in *People v Biddles*, 316 Mich App 148, 158; 896 NW2d 461 (2016):

The constitutional evil addressed by the *Lockridge* Court was not judicial fact-finding in and of itself, it was judicial fact-finding in conjunction with *required* application of those found facts for purposes of increasing a mandatory minimum

sentence range, which constitutional violation was remedied in *Lockridge* by making the guidelines *advisory*, not by eliminating judicial fact-finding.

Thus, a defendant sentenced after *Lockridge* is not entitled to resentencing merely because the trial court engaged in judicial fact-finding to score the OVs. Instead, to be entitled to relief under *Lockridge*, a defendant must demonstrate that his minimum sentence was actually constrained by a violation of the Sixth Amendment, i.e., by the trial court's adherence to mandatory sentencing guidelines. *Lockridge*, 498 Mich at 395.

In this case, defendant was sentenced eight months after *Lockridge* was decided. The trial court is presumed to have been aware of *Lockridge* when it imposed sentence, see *People v Alexander*, 234 Mich App 665, 674-675; 599 NW2d 749 (1999), and there is nothing in the record to suggest that the trial court failed to recognize that the guidelines were advisory or that the court sentenced defendant in a manner inconsistent with *Lockridge*. Because the guidelines were advisory, and the trial court was permitted to rely on judicially-found facts to score OVs 1, 3, 4, 7, and 10, defendant has not demonstrated that an unconstitutional constraint on judicial discretion actually impaired his Sixth Amendment right. *Lockridge*, 498 Mich at 395. Defendant is not entitled to resentencing.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Karen M. Fort Hood
/s/ Brock A. Swartzle