*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ANTHONY JOSEPH DEFOREST,

Defendant-Appellant.

UNPUBLISHED
December 12, 2024
10:05 AM

No. 363989
Gladwin Circuit Court
LC No. 21-011167-FC

Before: GADOLA, C.J., and K. F. KELLY and REDFORD, JJ.

PER CURIAM.

A jury convicted defendant of one count of felon in possession of a firearm, MCL 750.224f, one count of felon in possession of ammunition, MCL 750.224f(6), one count of fleeing or eluding a police officer, fourth-degree, MCL 257.602a(2), and one count of carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant appeals as of right. We affirm.

## I. BACKGROUND

Defendant's convictions arise out of an incident during which defendant drove his vehicle into a field, following a high speed police chase involving Deputy Pahl and Deputy Weston of the Gladwin County Sheriff's Office. At approximately 2:55 a.m. on October 15, 2021, the deputies observed defendant's vehicle stationary in the middle of a two-lane road. Defendant began accelerating and the deputies followed. They began "pacing the vehicle at approximately 80 miles an hour," and at that point, activated their lights and sirens. As they approached an intersection, defendant began to slow down. Deputy Weston testified at trial that he used a spotlight to illuminate the inside of defendant's vehicle and immediately recognized defendant based on two previous encounters: the first, a traffic stop that resulted in a tow, and the second, a search of defendant's vehicle. Once defendant turned, he accelerated again, and turned into a muddy field, eventually turning the vehicle's engine and lights off. To avoid getting stuck, the deputies approached the vehicle on foot. The deputies found "nobody in it or around" the vehicle, and observed foot tracks leading away. Deputy Weston testified at trial that he recognized the vehicle from his previous encounters with defendant.

A search warrant was later executed for the vehicle, during which firearms were removed from the passenger seat, as well as ammunition from the firearms. Detective Sergeant Cuddie of the Gladwin County Sheriff's Office, who was called in to assist Deputy Pahl and Weston the night of the incident, testified at trial that an individual who lived in Clare County, Kelley Gillis, reported a breaking and entering of his property, which resulted in several missing firearms. Gillis arrived to pick up the firearms and proved that he was the owner by matching all the firearm serial numbers to those he had written down in a booklet. Deputy Pahl later spoke with Scott Kanyo, an individual who lived close to the field where the vehicle had become stuck; Kanyo testified at trial that he knew defendant through a mutual friend, and allowed him to stay at the residence as needed. Kanyo testified that, before sunrise the day of the incident, he saw defendant leaving the residence in defendant's mother's vehicle.

The jury convicted defendant of all charges. Defendant moved for a new trial and an evidentiary hearing; after oral argument on the motion, the trial court granted an evidentiary hearing. After defendant's evidentiary hearing was held, the trial court issued a written opinion denying defendant's motion for a new trial. Defendant now appeals, arguing that defense counsel was ineffective for failing to stipulate to defendant's previous felony conviction before it was mentioned by the prosecutor at trial; the trial court plainly erred by failing to instruct the jury as to how to evaluate evidence of the felony conviction for a proper purpose and defense counsel was ineffective for failing to request such an instruction; defendant's right to a fair trial was violated when the prosecution presented evidence that the firearms in his truck were stolen during a breaking and entering and defense counsel was ineffective for failing to object to the admission of such evidence; and that MCL 769.1k(1)(b)(*iii*) is unconstitutional.

## II. ANALYSIS

### A. FAILURE TO STIPULATE

Defendant first argues that defense counsel was ineffective in failing to stipulate to defendant's felony conviction before his previous judgment of sentence (JOS) was admitted and shown to the jury by the prosecutor. We disagree.

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). If the trial court has held a *Ginther* hearing, the trial court "first must find the facts, and then must decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel." *Id*. We review the trial court's factual findings for clear error. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). A trial court's finding "is clearly erroneous when, although there is evidence to support it, the reviewing court, on the whole record, is left with the definite and firm conviction that a mistake has been made." *People v Dendel*, 481 Mich 114, 130; 748 NW2d 859 (2008).

In *People v Armstrong*, 490 Mich 281, 289-290; 806 NW2d 676 (2011), the Michigan Supreme Court stated:

> A defendant must meet two requirements to warrant a new trial because of the ineffective assistance of trial counsel. First, the defendant must show that

counsel's performance fell below an objective standard of reasonableness. In doing so, the defendant must overcome the strong presumption that counsel's assistance constituted sound trial strategy. Second, the defendant must show that, but for counsel's deficient performance, a different result would have been reasonably probable. [See *Strickland v Washington*, 466 US 668, 687-688; 104 S Ct 2052; 80 L Ed 2d 674.]

"[D]ecisions regarding what evidence to present and which witnesses to call are presumed to be matters of trial strategy, and we will not second-guess strategic decisions with the benefit of hindsight." *People v Dunigan*, 299 Mich App 579, 589-590; 831 NW2d 243 (2013). Defense counsel "must be afforded broad discretion in the handling of cases[.]" *People v Pickens*, 446 Mich 298, 325; 521 NW2d 797 (1994).

In *Old Chief v US*, 519 US 172, 174; 117 S Ct 644; 136 L Ed 2d 574 (1997), the United States Supreme Court held that a district court abuses its discretion under FRE 403 if it spurns a defendant's offer to concede a prior conviction "when the name or nature of the prior offense raises the risk of a verdict tainted by improper considerations, and when the purpose of the evidence is solely to prove the element of prior conviction." In *People v Swint*, 225 Mich App 353, 379; 572 NW2d 666 (1997), we held that the trial court abused its discretion by refusing to accept defendant's stipulation that he had been convicted of felonious assault and was ineligible to possess a firearm, but that this abuse of discretion "was harmless in light of the overwhelming evidence presented at trial."

In the present case, during trial, the prosecutor moved to admit a JOS document that indicated that, in 2017, defendant pleaded guilty to one count of breaking and entering with intent, MCL 750.110; his other charges, which included home invasion, second degree, MCL 750.110a(3), and three counts of unlawful possession and driving away of a motor vehicle, MCL 750.413, were dismissed. Defense counsel did not object to its admission, and the trial court allowed it to be presented to the jury. During defendant's evidentiary hearing, defense counsel testified that she never considered stipulating to defendant's felony conviction, and that admission of the JOS "was a very quick matter that was—that was kind of my intent there. I didn't want to draw attention to it."

In its decision on defendant's motion for a new trial, the trial court began by acknowledging that, pursuant to *Swint*, 225 Mich App at 379, a "defendant may offer to stipulate to the fact that he has a felony conviction that would otherwise preclude his possession of a firearm, and a Court is bound to accept that stipulation." The trial court concluded that, however, *Swint* "does not require that such a stipulation be made." The trial court stated that "[t]here is no evidence provided that any juror used the other information on the judgment for any improper purpose" and that defendant's argument that admission of the JOS was prejudicial is "undoubtedly speculative." Finally, the trial court concluded that, as defense counsel testified at the evidentiary hearing, her decision not to stipulate to defendant's felony conviction was a matter of trial strategy.

The trial court's findings were not erroneous. See *Trakhtenberg*, 493 Mich at 47. Defendant fails to present any authority for his contention that defense counsel was actually *required* to stipulate to the felony conviction, only that she had the *option*. See *Swint*, 225 Mich App at 379. Defense counsel testified that she decided to not exercise that option as a trial strategy

to avoid drawing attention to the conviction. We will not second-guess matters of trial strategy on appeal, see *Dunigan*, 299 Mich App at 589-590, affording defense counsel "broad discretion" in such matters, *Pickens*, 446 Mich at 325. Furthermore, a "particular strategy does not constitute ineffective assistance of counsel simply because it does not work." *People v Matuszak*, 263 Mich App 42, 61; 687 NW2d 342 (2004). Therefore, defendant has failed to overcome the presumption that defense counsel's performance was not sound trial strategy and failed to show that it fell below an objective standard of reasonableness. See *Armstrong*, 490 Mich at 290.

Even if defense counsel's performance was unreasonable and did not constitute sound trial strategy, defendant failed to demonstrate that, but for defense counsel's deficient performance, a different result was reasonably probable. See *id*. Defendant argues that the fact that the jury was shown his previous breaking and entering conviction was "unduly prejudicial." However, the presentation of defendant's JOS to the jury was not outcome-determinative.

The trial court found that "[a]ll together, and particularly from the direct observation from Deputy Weston and the circumstance that Scott Kanyo saw Defendant in the area, the evidence of Defendant's guilt is overwhelming." The record supports the trial court's findings. Deputy Weston testified that he used a spotlight to shine "an extremely bright light" into defendant's open car window, giving him "an unobstructed view inside the vehicle." Deputy Weston testified that he recognized defendant immediately from two previous encounters. Kanyo, defendant's acquaintance who lived in the area where the incident occurred, testified that he saw defendant outside his residence before sunrise that morning, and that defendant left in a vehicle Kanyo believed to be defendant's mother's vehicle.

Therefore, it cannot be said that defendant's convictions resulted from defense counsel's deficiency, see *Armstrong*, 490 Mich at 290, and the trial court did not clearly err by finding that defense counsel's failure to stipulate to defendant's felony conviction did not violate defendant's right to effective assistance of counsel. See *Trakhtenberg*, 493 Mich at 47.

## B. JURY INSTRUCTIONS OR INEFFECTIVE ASSISTANCE

Defendant also argues that the trial court plainly erred by failing to include M Crim JI 4.11 in its jury instructions because the jury was not properly instructed with how to evaluate the evidence presented in the JOS, and that alternatively, defense counsel was ineffective for failing to request such an instruction. We disagree.

Because defense counsel approved the jury instructions as read by the trial court, defendant has waived this issue on appeal. See *People v Lueth*, 253 Mich App 670, 688; 660 NW2d 322 (2002), citing *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) ("Waiver has been defined as the intentional relinquishment or abandonment of a known right. It differs from forfeiture, which has been explained as the failure to make the timely assertion of a right. One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error. Mere forfeiture, on the other hand, does not extinguish an error.") (quotation marks and citations omitted). This waiver extinguishes any error. See *Carter*, 462 Mich at 216. Regardless, we will treat this issue as unpreserved and review for plain error affecting defendant's substantial rights. See *People v Coy*, 258 Mich App 1, 12; 669 NW2d 831 (2003).

-4-

First, there must be an error; second, the error must be plain (i.e., clear or obvious); and third, the error must affect substantial rights (i.e., there must be a showing that the error was outcome determinative). Moreover, reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings, independent of guilt or innocence. [*Id.* (citation omitted).]

"A criminal defendant has the right to have a properly instructed jury consider the evidence against him." *People v Mills*, 450 Mich 61, 80; 537 NW2d 909 (1995). "[T]he trial court is required to instruct the jury concerning the law applicable to the case and fully and fairly present the case to the jury in an understandable manner." *Id*. The use of pertinent portions of the model instructions adopted by the Committee on Model Criminal Jury Instructions is mandatory if (1) they are applicable, (2) they accurately state the applicable law, and (3) a party requests them. See MCR 2.512(D)(1) and MCR 2.512(D)(2). Even "if somewhat imperfect, jury instructions do not create error if they fairly present the issues for trial and sufficiently protect the defendant's rights." *People v Spaulding*, 332 Mich App 638, 653; 957 NW2d 843 (2020) (quotation marks and citation omitted).

M Crim JI 4.11(1) provides in part that, when evidence is introduced "to show that the defendant committed [a crime / crimes / improper acts] for which [he / she] is not on trial," jurors must not consider such evidence for any improper purpose. M Crim JI 4.11(3). For example, jurors must not decide that "the defendant is a bad person or that [he / she] is likely to commit crimes. . . . All the evidence must convince you beyond a reasonable doubt that the defendant committed the alleged crime, or you must find [him / her] not guilty." *Id*.

In the present case, at the conclusion of trial, the trial court instructed the jury in part to "consider each crime separately in light of all of the evidence in the case." See M Crim JI 3.20. Defendant's convictions included one count of felon in possession of a firearm. See MCL 750.224f(2) ([a] person convicted of a specified felony shall not possess, use, transport, sell, purchase, carry, ship, receive, or distribute a firearm in this state . . . .). During defendant's evidentiary hearing, defense counsel testified that she chose not to provide a limiting instruction for the conviction presented in the JOS because "my intent was not to draw attention to the fact that there—there was prior convictions."

First, the trial court did not plainly err by failing to instruct the jury with M Crim JI 4.11 because defense counsel did not request such an instruction. See *Mills*, 450 Mich at 80-81 ("a trial court is not required to present an instruction of the defendant's theory to the jury unless the defendant makes such a request."). Defendant speculates that because the trial court did not instruct the jury as to M Crim JI 4.11, the jury used the evidence presented in the JOS for its propensity. This argument is not persuasive.

In *People v Green*, 228 Mich App 684, 691; 228 Mich App 684 (1998), this Court stated that "adequate safeguards can be erected to ensure that a defendant charged with both felon-in-possession and other charges arising from the same incident suffers no unfair prejudice if a single trial is conducted for all the charges." (Quotation marks and citation omitted). These "safeguards" include "a limiting instruction emphasizing that the jury must give separate consideration to each

count of the indictment" and "a specific instruction to consider the prior conviction only as it relates to the felon-in-possession charge." *Id*. at 691-692. Although the trial court in *Green* did not "give a specific instruction that the stipulation was to be considered only as it related to [defendant's] felon-in-possession charge," this Court held that because other adequate safeguards were in place at trial, defendant was not entitled to reversal. *Id*. at 692.

In the present case, the trial court instructed the jury to "consider each crime separately in light of all of the evidence in the case." Juries are presumed to have followed the instructions of the trial court, *People v Breidenbach*, 498 Mich 1, 13; 798 NW2d 738 (2011), and the trial court instructed the jury to "give separate consideration to each count of the indictment," *Green*, 228 Mich App at 692. This instruction was an "adequate safeguard" pursuant to *Green*. *Id*. at 691-692. Accordingly, the trial court did not plainly err affecting defendant's substantial rights by failing to instruct the jury with M Crim JI 4.11. See *Coy*, 258 Mich App at 12.

Second, in its decision on defendant's motion for a new trial, the trial court stated that "there is nothing in the transcript of the case that the evidence of defendant's prior conviction was presented for anything more than evidence of the element of the charged offense." The trial court also stated that defendant "fails to show that the outcome of trial would have been affected" by a M Crim JI 4.11 instruction.

The trial court's findings were not erroneous. See *Trakhtenberg*, 493 Mich at 47. The prosecutor did not further discuss the conviction after presenting the JOS to the jury. Defense counsel testified at the evidentiary hearing that her intention was to avoid drawing attention to the prior conviction and disagreed that it would have benefited defendant for the jury to hear that his prior felony conviction could only be considered for the felon-in-possession charge. "Failing to request a particular jury instruction can be a matter of trial strategy." *Dunigan*, 299 Mich App at 584. Therefore, defendant has failed to overcome the presumption that defense counsel's performance was sound trial strategy and failed to show that it fell below an objective standard of reasonableness. See *Armstrong*, 490 Mich at 290.

Again, even if defense counsel's performance was unreasonable and did not constitute sound trial strategy, defendant failed to demonstrate that, but for defense counsel's deficient performance, a different result was reasonably probable. See *id*. Considering all the evidence presented at trial, there was no reasonable probability of another outcome, even with a M Crim JI 4.11 instruction. The trial court did not clearly err by finding that defense counsel's failure to request M Crim JI 4.11 as a jury instruction did not violate defendant's right to effective assistance of counsel. See *Trakhtenberg*, 493 Mich at 47.

## C. ADMISSION OF EVIDENCE OR INEFFECTIVE ASSISTANCE

Defendant next argues that the trial court abused its discretion by admitting the testimony of Deputy Pahl, Detective Sergeant Cuddie, and Gillis as to the ownership of the firearms found in defendant's vehicle because they were irrelevant and unduly prejudicial.

A trial court's decision to admit evidence is reviewed for an abuse of discretion. *People v Denson*, 500 Mich 385, 396; 902 NW2d 306 (2017). "A trial court abuses its discretion when its decision falls outside the range of principled outcomes." *People v Feezel*, 486 Mich 184, 192; 783

NW2d 67 (2010) (quotation marks and citation omitted). A trial court may abuse its discretion when its decision arises from an "incorrect legal framework," *People v Hine*, 467 Mich 242, 251; 650 NW2d 659 (2002), or when the evidence admitted is "inadmissible as a matter of law," *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010). We review de novo whether the trial court properly applied the law or whether a rule of evidence or statute precludes admission. *Id.*

In order to be admissible, evidence must be relevant, see MRE 402, and in order to be relevant, evidence must be both material and probative. See *People v Henry*, 315 Mich App 130, 144; 899 NW2d 1 (2016). Generally, " '[e]vidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' " *People v Watkins*, 491 Mich 450, 470; 818 NW2d 296 (2012), quoting MRE 401. To be material, evidence must be "of consequence to the determination of the action." *People v Brooks*, 453 Mich 511, 518; 557 NW2d 106 (1996) (quotation marks and citation omitted). A trial court may exclude admissible evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403.

As long as evidence is both relevant and admissible, "it does not matter that the evidence gives rise to multiple inferences or that an inference gives rise to further inferences," and all fairly drawn inferences from the evidence should be considered. *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). The credibility of witnesses and the weight given to their testimonies are matters for the fact-finder to determine, and we do not interfere with those determinations. *People v Mehall*, 454 Mich 1, 6; 557 NW2d 110 (1997).

In the present case, Deputy Pahl testified that Gillis, the individual who came to the police station to pick up his firearms after the search warrant was executed, was "a victim of breaking and entering." Detective Sergeant Cuddie also testified that the ownership of the firearms was connected to an individual who had reported a breaking and entering of his property. Finally, Gillis testified that he was testifying because "of someone breaking into my home and stealing guns and other stuff." Defendant's relevancy argument on appeal is premised on the contention that the sole issue at trial was defendant's identity, not the ownership of the firearms in defendant's vehicle. However, the prosecutor argues that the evidence that the firearms were stolen from Gillis rebutted defendant's defense, which was that the deputies conducted a poor investigation into the identity of the driver of the vehicle. We find merit in the prosecutor's argument.

Deputy Pahl testified that he did not make any molds or take any pictures of the footprints leading away from the vehicle that night. Detective Sergeant Cuddie affirmed that no fingerprints were taken from the vehicle or the firearms found in the vehicle. Deputy Pahl testified that when he conducted a search warrant on defendant's vehicle, he also found a pill bottle, labeled "Adrian Ford." However, Deputy Pahl did not investigate this name any further. Defense counsel included these testimonies in her closing argument, during which she stated: "I don't think that there is malicious intent, but I do think that the cops often get blinders. We have a guy. We think we've got our man, and that's it. I'm not going to look at all this stuff. I'm not going to try to test my theory."

Accordingly, considering defendant's defense theory and the prosecutor's burden to rebut that theory,[1] Detective Sergeant Cuddie's testimony that Gillis reported a breaking and entering of his property that resulted in several missing firearms, and Gillis's testimony that his guns were stolen, were relevant because they made it less probable that Gillis was the driver of the vehicle that night. See *Watkins*, 491 Mich at 470. The testimonies were material because they were of consequence to the determination of the identity of the individual driving the vehicle that night. See *Brooks*, 353 Mich at 518. This evidence also gave rise to the fairly drawn inference that the deputies had no reason to investigate Gillis as a potential suspect. See *Hardiman*, 466 Mich at 428.

Furthermore, the probative value of this evidence is not substantially outweighed by the danger of unfair prejudice. "Unfair prejudice" exists when "there is a danger that the evidence will be given undue or preemptive weight by the jury" or when "it would be inequitable to allow use of the evidence." *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008). Unfair prejudice does not mean merely damaging. *Mills*, 450 Mich at 75. As stated, the evidence that the firearms found in the vehicle were stolen was of consequence to the relevant facts of the case. The mere fact that the evidence may have been damaging for the jury's impression of defendant is not enough to make the evidence unfairly prejudicial. The most efficient way for the prosecution to explain why Gillis was not investigated as a potential suspect, and that Gillis was not the driver of the vehicle that night, which was essential to the jury's understanding of the case, was to admit the evidence of how the firearms got into the vehicle. See *Blackston*, 481 Mich at 462.

The trial court did not abuse its discretion by admitting evidence that the firearms recovered from defendant's vehicle were stolen in a separate breaking and entering incident, and the trial court's resolution of this evidentiary question was not outside the range of principled outcomes. See *Feezel*, 486 Mich at 192. Accordingly, defendant is not entitled to a new trial.

Defendant further argues that trial counsel was ineffective for failing to object to the evidence regarding the ownership and theft of the firearms. This argument is not persuasive. During defendant's evidentiary hearing, defense counsel affirmed that it was never part of her defense to argue that defendant lawfully owned the firearms in the vehicle because "I wasn't putting it in front of the jury that he lawfully owned something he couldn't." Defense counsel agreed that Gillis's testimony helped to clarify the "chain of custody," testifying that "a side issue for us, was the fact that we didn't get the opportunity to fingerprint those [the firearms], because they had been returned to their owner." Defense counsel also agreed that Gillis's testimony was relevant even if it was not in defendant's favor.

In its decision on defendant's motion for a new trial, trial court first stated that, "[c]ontrary to defendant's claims," defense counsel *did* object to Gillis's testimony. The record demonstrates that counsel objected several times to the admission of the evidence at issue. Defense counsel first objected to the use of the word "victim," in reference to Gillis as a "victim of breaking and entering," and also objected to the relevancy of the "breaking and entering." This objection was sustained. Second, defense counsel twice objected to the relevance of a line of questioning

---

[1] See *People v VanderVliet*, 444 Mich 52, 78; 508 NW2d 114 (1993) ("a plea of not guilty puts the prosecution to its proofs regarding all elements of the crime charged.")

between the prosecutor and Gillis, during which the prosecutor asked Gillis when he last saw the firearms and whether there was a reason why the firearms were found in defendant's vehicle. These objections were both sustained.

The trial court also emphasized that, as defense counsel stated during the evidentiary hearing, Gillis's testimony clarified the chain of custody of the firearms, and allowed defendant to argue that he did not have the opportunity to fingerprint the firearms. Defense counsel questioned Detective Sergeant Cuddie about the absence of fingerprints taken from the vehicle or the firearms, and mentioned this again in her closing argument. The trial court also noted that when Gillis testified that he was testifying because "of someone breaking into my home and stealing guns and other stuff," the prosecutor responded that he would not get "into that, because that might be a whole other can of worms." The trial court found that defense counsel's failure to object to this statement was justified, quoting *People v Bahoda*, 448 Mich 261, 287 n 54; 531 NW2d 659 (1995), in which the Court stated that "there are times when it is better not to object and draw attention to an improper comment." The trial court noted that defense counsel's decision not to "draw attention to fleeting testimony" was sound trial strategy. See *Dunigan*, 299 Mich App at 589-590.

Accordingly, defendant has failed to demonstrate that defense counsel's performance fell below an objective standard of reasonableness. See *Armstrong*, 490 Mich at 290. Even if defense counsel's performance was unreasonable and did not constitute sound trial strategy, defendant failed to demonstrate that a different result was reasonably probable. See *id*. As the trial court stated in its findings, considering Deputy Weston's immediate identification of defendant and Kanyo's testimony that he saw defendant in the area that morning, there was no reasonable probability of another outcome, even if Gillis's testimony, or all testimony relating to the ownership of the firearms, was excluded. The trial court did not clearly err by finding that admission of testimony relating to the ownership and theft of the firearms did not violate defendant's right to effective assistance of counsel. See *Trakhtenberg*, 493 Mich at 47.

## D. CONSTITUTIONALITY OF MCL 769.1k(1)(b)(*iii*)

Finally, defendant argues that MCL 769.1k(1)(b)(*iii*) is unconstitutional and that *People v Johnson*, 336 Mich App 688, 704; 971 NW2d 692 (2021), was wrongly decided because the statute creates pressure for trial court judges to convict defendants in order to generate revenue, undermines defendants' due-process right to an impartial judge, and violates the separation of powers. We review constitutional issues de novo. *People v Pennington*, 240 Mich App 188, 191; 610 NW2d 608 (2000). Questions of statutory interpretation are also reviewed de novo. *People v Brown*, 330 Mich App 223, 229; 946 NW2d 852 (2019).

MCL 769.1k(1)(b)(*iii*) provides that if a defendant is found guilty after a hearing or trial, the trial court may impose, at the time of sentencing, "any cost reasonably related to the actual costs incurred by the trial court without separately calculating those costs involved in the particular case[.]" In the present case, during sentencing, defendant was ordered to pay $500 in court costs pursuant to MCL 769.1k(1)(b)(*iii*).

In *Johnson*, 336 Mich App at 704, we held that MCL 769.1k(1)(b)(*iii*) was constitutional because the defendant failed to show "that this statute creates a situation where there exists no set of circumstances under which a judge in this state is impartial" or that "all trial judges must be

disqualified because the statute creates a financial interest in the judiciary to cause them to ignore their constitutional mandates." (Quotation marks and citation omitted). We also held that "although MCL 769.1k(1)(b)(*iii*) generates revenue . . . nothing in the plain language of the statute" directs "the flow of money" or creates "a funding system for the trial courts[.]" *Id*. at 704-705 (quotation marks and citation omitted). Therefore, we concluded that the defendant did not establish that "the Legislature has made it impossible for trial courts to fulfill their constitutional mandates or that MCL 769.1k(1)(b)(*iii*) is facially unconstitutional." *Id*. Accordingly, defendant is not entitled to relief on this issue.[2]

Affirmed.

/s/ Michael F. Gadola
/s/ Kirsten Frank Kelly
/s/ James Robert Redford

---

[2] On July 22, 2022, the Michigan Supreme Court granted leave to appeal our decision in Johnson. *People v Johnson*, 509 Mich 1094 (2022). However, on July 7, 2023, the Court vacated its order and denied leave to appeal, holding that "we are no longer persuaded that the questions presented should be reviewed by this Court." *People v Johnson*, 511 Mich 1047 (2023).